UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | 1:03-cv-251/ 1:02-cr-41 |
| | ) | *Collier* |
| ALBERT THURMAN | ) | |

**MEMORANDUM**

## I. Introduction

Albert Thurman ("Thurman") a federal prisoner, brings this *pro se* motion for post-conviction relief pursuant to 28 U.S.C. § 2255. For the reasons that follow, the Court has determined a hearing is not necessary and concludes the § 2255 motion lacks merit and will be **DENIED**. Thurman is not entitled to relief under § 2255.

## II. Procedural Background

On April 9, 2002, a four-count indictment was filed charging Thurman in Count One with possessing equipment, chemicals, products, and materials that could be used to manufacture methamphetamine in violation of 21 U.S.C. § 843(a)(6). Count Two of the indictment charged Thurman with knowingly, intentionally, and without authority attempting to manufacture methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 846. Thurman was charged in Count Three as a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Count Four of the indictment charged Thurman with possessing, with the intent to distribute, methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. Thurman pleaded guilty to the four-count indictment without the benefit of a plea agreement on May 23, 2002.

On September 6, 2002, Thurman was sentenced to 70 months incarceration on each of the

four counts, to be served concurrently. Thurman did not take a direct appeal from the judgment of conviction. This § 2255 motion was timely filed on July 21, 2003, alleging several instances of ineffective assistance of counsel, a double jeopardy claim, and a government misconduct claim.

## III.    Standard of Review

This Court must vacate and set aside the sentence if it finds "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack . . ." 28 U.S.C. § 2255. Under Rule 4 of the Rules Governing Section 2255 Proceedings for the United States District Courts, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveals the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the Court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts that entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude that had a substantial and injurious effect or influence on the

2

proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted)(§ 2254 case); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994)(applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F.2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). Relief for a nonconstitutional error requires a showing of a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996).

Further, a § 2255 motion is not a substitute for a direct appeal and it cannot do service for an appeal. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *United States v. Timmreck*, 441 U.S. 780, 784 (1979); *Grant v. United States*, 72 F.3d at 506; *United States v. Walsh*, 733 F.2d 31, 35 (6th Cir. 1984). Thurman cannot use a § 2255 motion to litigate the issues that should have been presented and decided on direct appeal unless cause is shown for the tardy challenge and "actual prejudice" resulting from the error is demonstrated, *United States v. Frady*, 456 U.S. at 167-68; or the movant is actually innocent of the crime. *See Bousley v. United States,* 523 U.S. at 622. Issues that are presented and considered on direct appeal cannot be litigated again in a § 2255 proceeding absent exceptional circumstances or an intervening change in the law. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999); *Jones v. United States*, 178 F.3d 790, 796 (6th Cir.), *cert. denied*, 528 U.S. 933 (1999); *Oliver v. United States*, 90 F.3d 177, 180 (6th Cir. 1996); *DuPont v. United States*, 76 F.3d 108, 110-11 (6th Cir. 1996).

**IV.    Facts**

The following pertinent facts are taken from the Presentence Investigation Report ("PSR") prepared by the United States Probation Office:

> 8.      On January 23, 2001, in Rhea County, Tennessee, Deputy Sheriff Mike Bice executed a search warrant at the residence of the defendant, Albert Thurman, in Rhea County, Tennessee. During the execution of the search warrant, Mr. Thurman was at home with his wife. Officers found components of a methamphetamine laboratory inside the defendant's home. These items included: two one gallon jugs with soaking match striker plates, four propane torches, a paper bag containing matchbooks, coffee filters, rubber gloves, one bottle of Red Devil lye, six quart glass jars, a plastic bottle with attached tubing, two different bottles of hydrogen peroxide, four bottles of Heet gas line antifreeze, two bottles of iso-heat, one box of fire starters, a can of paint thinner, five cans of acetone, two gallons of Coleman fuel, a glass coffee pot, one jar containing iodine crystals (no known amount), one gallon jug of muriatic acid, four glass smoking pipes and a paper bag containing aluminum foil strips. Also, Drug Enforcement Administration (DEA) Agent Crosby Jones pulled samples from various containers and one of the samples contained liquid which contained methamphetamine.
>
> 9.      In addition to the items associated with the methamphetamine laboratory, officers also found numerous firearms, including: a Glenfield .22 long rifle, a Stevens model 62 caliber .22, a Ruger .44 magnum carbine, a Mossburg .22 caliber rifle, a 20 gauge double barrel shotgun, a Stevens model 67 shotgun and a Charter Arms Bulldog .44 magnum handgun. None of these firearms were manufactured in the state of Tennessee and therefore necessarily traveled in interstate commerce. The defendant is a convicted felon. The defendant's two minor children were home at the time of the search warrant; they were taken to the hospital in Rhea County. The bedroom where the children were sleeping was very near the area where the methamphetamine was being "gassed off."
>
> 10.     On December 7, 2001, the defendant was the subject of a traffic stop by Deputy Matt Rose with the Rhea County Sheriff's Department in Rhea County, Tennessee. Prior to Mr. Thurman being pulled over by Deputy Rose, Rose noticed Thurman swerving across the center line. Rose activated his blue lights and Thurman pulled his

> vehicle over to the side of the road. Subsequent to a consent given by Mr. Thurman, Rose searched the vehicle and found a quart milk container containing six plastic baggies of suspected methamphetamine. However, due to the condition and nature of the milk container and the remaining milk in the container, the methamphetamine was unable to be tested. Therefore, there are no specific quantities of methamphetamine attributable to the defendant. So, he will be attributed with the lowest possible amount of methamphetamine found in the drug quantity table, that is, less than 2.5 grams of methamphetamine.

*PSR*, pp. 3-4.

Thurman was sentenced on September 6, 2006. At the September 6, 2006, sentencing hearing the Court found Thurman's criminal history category was I. Thurman's total offense level was 27. Thurman's offense level of 27, combined with his criminal history category of I resulted in a sentencing range of 70 to 87 months imprisonment. Thurman was sentenced to 70 months of imprisonment, to be followed by three (3) years of supervised release.

## V.     **Analysis**

Thurman's § 2255 motion to vacate contains three claims with several subclaims. Thurman's § 2255 motion is difficult to decipher. Thurman alleges counsel was ineffective for the following reasons: (1) counsel coerced Thurman into pleading guilty without explaining the consequences of entering a guilty plea; specifically, counsel failed to tell him he was waiving his right to appeal by signing the guilty plea agreement; (2) counsel gave erroneous legal advice and failed to seek a downward departure pursuant to United States Sentencing Guidelines ("USSG") § 5K1.1 and 18 U.S.C. § 4042(B); and (3) other miscellaneous reasons. Thurman also raises a double jeopardy claim and a government misconduct on the basis of a selective prosecution claim.

## A. Ineffective Assistance of Counsel

Thurman submits several sub-claims under his ineffective assistance of counsel claim. To establish ineffective assistance of counsel, Thurman must demonstrate a deficiency by counsel which rendered counsel's assistance objectively unreasonable and that the deficient performance resulted in prejudice to him. The Supreme Court, in *Strickland v. Washington,* 466 U.S. 668 (1984), established the criteria for determining whether a Sixth Amendment claim of ineffective assistance of counsel is meritorious. The *Strickland* test requires a defendant to demonstrate two essential elements: (1) counsel's performance was deficient, *i.e.,* below the standard of competence demanded of attorneys in criminal cases; and (2) counsel's deficient performance prejudiced the defense, *i.e.* deprived the defendant of a fair trial rendering the outcome of the trial unreliable. *Id.* at 687-88; *see also Flippins v. United States,* 808 F.2d 16, 17-18 (6th Cir.), *cert. denied,* 481 U.S. 1056 (1987). In plea proceedings, the movant must show but for counsel's deficient performance, he would not have pleaded guilty. *Hill v. Lockhart,* 474 U.S. 52, 58-59 (1985). The standard by which a court reviews counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland,* 466 U.S. at 689; *Sims v. Livesay,* 970 F.2d 1575, 1579-80 (6th Cir. 1992).

Thurman's claim of ineffective assistance of counsel in his § 2255 motion identifies four different instances of alleged ineffective assistance. First, he claims counsel coerced him into pleading guilty. Second, Thurman claims his trial counsel was ineffective for failing to advise him of the consequences of the plea agreement, specifically, that he was waiving his right to pursue a direct appeal. Thurman's third complaint is his plea was the result of counsel's erroneous legal advice. Lastly, Thurman complains counsel failed to seek a downward departure pursuant to § 5K.1

6

and 18 U.S.C. § 4042(B). The Court will address each claim below.

      **1.**     **Coerced Guilty Plea**

Thurman contends his guilty plea was coerced. As support for his allegation he makes the following nonsensical argument: "[C]ounsel's omission on this case was clear and defendant was forced and coerced by the pressure of the sentence that it was never explained to him, the consequence of this plea." (Court File No. 2, at 5]. Thurman claims he did not know the severity of the consequences of his plea agreement; specifically, he maintains he did not understand that, by signing the plea agreement, he was losing his right to a direct appeal.

Contrary to Thurman's claim, he did not execute a plea agreement with the government and he did not waive his right to appeal. Thurman pleaded guilty without the benefit of a plea agreement (Rearraignment Transcript ("R.T.") at 2). Thus, any claims he made regarding a plea agreement are without merit.

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citations omitted). Thurman has not identified which of his two attorneys, or whether both of them, coerced him into entering a guilty plea. Moreover, he has failed to offer any factual support whatsoever demonstrating coercion.

Nevertheless, Thurman is not entitled to relief on his claim that his plea was coerced because the record contradicts his allegations. Thurman claims he did not know the consequences of his plea agreement but this argument is undercut by the transcripts from the plea colloquy. First, when questioned by the Court at his rearraignment, Thurman informed the Court he had sufficient opportunity to discuss his case with his counsel, Mr. Martinez and Ms. LaLumia, and that he was

7

satisfied with their representation (Rearraignment Transcript "R.T." at 4).

The Court then proceeded to explain the rights Thurman was waiving by pleading guilty. The Court specifically informed Thurman he was giving up the right to plead not guilty; the right to a trial by jury; the right to assistance of counsel during the trial; the right to confront and cross-examine witnesses against him; the right not to be compelled to incriminate himself; the right to require the United States to prove his guilt beyond a reasonable doubt; the right to issue subpoenas to compel the attendance of witnesses to testify in his defense; and the presumption of innocence to which all persons are entitled until proven guilty beyond a reasonable doubt (R.T. at 4-5). Thurman acknowledged he understood he was waiving all those rights and giving up his right to a trial by pleading guilty.

In addition, the Court specifically asked Thurman whether anyone threatened him or made him any promises to get him to plead guilty. Thurman denied his guilty plea was based on any threats or promises and proceeded to enter guilty pleas to all four counts of the indictment (R.T. at 5-7). Thurman informed the Court he had read the "Factual Basis for Plea" document and it was a true and correct description of the facts of his case. The Court then concluded "the defendant is fully competent and capable of entering an informed plea and that his plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense." (R.T. at12).

The record reflects Thurman was thoroughly questioned during the entry of his guilty plea and answered in a fashion that left no question as to his knowing and voluntary act to enter a guilty plea. The answers given by Thurman in the entry of his guilty plea are incompatible with his post-conviction claim. Thurman voluntarily pleaded guilty and denied any coercion. Nothing in the

8

record before the Court dispels the reliability of Thurman's testimony at his guilty plea hearing.

Thurman has failed to prove by clear and convincing evidence that his guilty pleas were coerced and not knowing and voluntary. Accordingly, the Court rejects Thurman's factually unsupported assertions that his guilty pleas were coerced and **DENIES** him § 2255 relief on this claim. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (declarations by plaintiff in open court "carry a strong presumption of verity").

### 2. Counsel's Erroneous Advice and Failure to Request Departure

Thurman maintains his guilty plea was based on erroneous advice he received from counsel and counsel failed to seek a downward departure pursuant to USSG § 5K.1 and 18 U.S.C. § 4042(B). Thurman has failed to identify the erroneous advice he received from counsel. Consequently, Thurman is **DENIED** § 2255 relief on his erroneous-advice-of-counsel claim. Turning to Thurman's claim regarding counsel's alleged failure to seek a downward departure during his sentencing hearing, the Court concludes this claim does not warrant § 2255 relief as explained below.

The Government may request a downward departure in sentencing for offenders who provide "substantial assistance" in investigating or prosecuting other criminals. USSG § 5.K1.1. A downward departure for substantial assistance may only be granted on a motion from the Government. *Wade v. United States*, 504 U.S. 181, 185 (1991). Consequently, defense counsel was not permitted to file such a motion on Thurman's behalf. The Government's refusal to file a motion requesting a court to depart from the guidelines may only be reviewed by a court to determine whether the Government's decision was based on unconstitutional motives. *United States v. Hawkins*, 274 F.3d 420, 427 (6th Cir. 2001). The Government's refusal to file such a motion may

9

not be reviewed by a court for bad faith. *United States v. Moore*, 225 F.3d 637, 641 (6th Cir. 2000). Thurman does not assert the Government's failure to file a § 5K1.1 motion was based on unconstitutional motive; rather, he merely asserts counsel did not seek a downward departure pursuant to § 5K1.1. In addition, Thurman has failed to demonstrate he provided any assistance to the government that would warrant the filing of a motion pursuant to § 5K1.1. Accordingly, Thurman is **DENIED** relief on his claim relating to USSG § 5K1.1.

Thurman's reliance on 18 U.S.C. § 4042(B) to support his argument counsel failed to seek a downward departure is misplaced. This section pertains to the duties of the Bureau of Prisons. Hence, it is not applicable to Thurman's court proceedings or his trial counsels' conduct.

Accordingly, Thurman is **DENIED** relief on his ineffective assistance of counsel claims counsel gave erroneous advice and failed to seek a departure under § 5K1.1 and 18 U.S.C. § 4042(B)

### 3. Other Claims

Thurman raises several miscellaneous ineffective assistance of counsel claims in his supporting brief that he failed to raise in his § 2255 motion. Although not raised in his § 2255 motion, in his supporting brief Thurman claims he only saw his defense counsel on one occasion prior to the sentencing date and defense counsel was absent from his sentencing hearing. The Court will first address Thurman's claim he only met with defense counsel once prior to his sentencing.

During his rearraignment, the Court inquired of Thurman whether he had sufficient opportunity to discuss his case with counsel, Mr. Martinez and Ms.LaLumia. Thurman responded affirmatively ("R.T." at 4). The Court knows of no case establishing a minimum number of meetings counsel is required to attend with a criminal defendant in order for counsel to provide reasonably effective assistance of counsel. Nor has Thurman directed the Court's attention to any

cases constitutionally requiring a minimum number of times counsel must meet with a criminal defendant in preparation of his case. *See United States v. Olson*, 846 F.2d 1103, 1108 (7th Cir.), *cert denied*, 488 U.S. 850 (1988) ("[A]n experienced attorney 'can get more out of one interview with a client than a neophyte lawyer.'") (*quoting United States ex rel. Kleba v. McGinnis,* 796 F.2d 947, 954 (7th Cir. 1986)). Consequently, regardless of the number of times Thurman met with counsel, the fact that he was provided with a sufficient opportunity to discuss his case is all that is constitutionally required. Although it does not appear both of Thurman's counsel were present at this sentencing, the record reflects Ms. LaLumia, one of Thurman's attorneys, was present. Contrary to Thurman's assertion Ms. LaLumia failed to make any argument on his behalf, the sentencing transcript reflects Ms. LaLumia did make an argument on Thurman's behalf. Ms. LaLumia requested the Court to sentence Thurman to 70 months– the lowest sentence under the guideline range. Counsel's argument was effective in that Thurman received a sentence of 70 months (S.T. at 4-5). Thus, Thurman was represented by counsel at his sentencing hearing and counsel presented an argument on his behalf. Consequently, he has failed to demonstrate a constitutional violation. Accordingly, Thurman is **DENIED** § 2255 relief on his claims that counsel only met with him once prior to his sentencing hearing and that counsel was absent at his sentencing hearing.

Although not raised in his § 2255 motion, Thurman made reference to ineffective assistance of counsel in relation to the two-level sentence enhancement pursuant to USSG § 2D1.1(b)(1) in his supporting brief. Thurman claims his sentence was unjustly enhanced by two levels pursuant to § 2D1.1(b)(1) on the basis of the weapons found in his house. Thurman presumably contends trial counsel should have argued § 2D1.1(b)(1) should not have been applied to enhance his sentence because the guns were properly stored in a locked gun rack and were never in his possession.

11

A sentencing court must impose a two-point enhancement under § 2D1.1(b)(1) if the Government proves the defendant "possessed" a dangerous weapon during the commission of a drug-trafficking offense. USSG § 2D1.1(b)(1). If the Government meets this burden then "the burden 'shifts to the defendant to demonstrate it was clearly improbable that the weapon was connected to the offense.' . . . Only if the defendant can make this showing does the enhancement not apply." *United States v. Davidson*, 409 F.3d 304, 312 (6th Cir. 2005) (citations omitted). If it is clearly improbable the weapon was connected with the offense, then the Court would not impose a two-point enhancement. *See United States v. Thorton,* 198 F.3d 248 (6th Cir. 1999) (unpublished table decision), *available in* 1999 WL 993909.

To determine whether Thurman possessed the weapons for purposes of § 2D1.1(b)(1), the Court looks to the proximity between the weapon and the drugs. The enhancement will apply whether Thurman actually or constructively possessed the weapons. "To establish constructive possession, the government must show that the defendant had ownership, dominion, or control over the firearms or dominion over the premises where the firearm is located." *United States v. Solorio*, 337 F.3d 580, 599 (6th Cir.), *cert. denied*, 540 U.S. 1063 (2003). There is no doubt Thurman constructively possessed the firearms found inside his residence, along with the components of a methamphetamine laboratory, when the Rhea County Sheriff's department executed a search warrant. The firearms were found in Thurman's residence at the same time chemicals, equipment, and products used to manufacture methamphetamine were found in his home and Thurman had the ability to exercise dominion or control over the weapons and had dominion over his residence. Thus, the burden is on Thurman to demonstrate it was clearly improbable that the weapons were connected with his offense. Thurman has not provided sufficient evidence that demonstrates he

12

possessed the weapons for reasons unrelated to drug activities. Thurman's assertions the weapons were inherited, located in a locked gun rack, and were returned to his wife by the Rhea County Sheriff after he was sentenced does not demonstrate it was clearly improbable that the weapons were connected with his offense. Thurman has failed to meet his burden of demonstrating it was clearly improbable that the weapons were connected with the offense. Accordingly, Thurman is **DENIED** relief on his claim that the weapon enhancement was error.

### B.     Double Jeopardy

The Court is unable to decipher Thurman's double jeopardy claim. Thurman claims his "[c]onviction was obtained by violation of double jeopardy." Thurman supports this claim with the following:

> Government uses the plea agreement contract to pressure the defendant to cooaporate [sic], and this falls into the color of double jeopardy. By pleading guilty defendant admits the charge crime and waives many if not all of his Constitutional Rights, before accepting such contract defendant must be advice [sic] by a competent counsel, and also the defendant must be competent to enter a guilty plea, and by admitting this charge of guilty plea by being a non-competent defendant therefore lacks extraordinary sense of Justice.

(Court File No. 1, at 4).

Thurman pleaded guilty to the offenses as charged in counts one, two, three, and four of the indictment without a written plea agreement. Thus, any reference to a plea agreement is inaccurate and provides no support to Thurman's double jeopardy claim. Thurman's double jeopardy claim is indecipherable and does not substantially comply with Rule 2 of the Rules Governing Section 2255 Proceedings for the United States District Courts, which requires each claim for relief to be factually supported. Accordingly, Thurman is **DENIED** § 2255 relief on his double jeopardy claim.

### C. Selective Prosecution

Thurman claims the Government is guilty of misconduct in their selective prosecution of him. Once again Thurman's submission is indecipherable and his claim the Government is guilty of selective prosecution is unsubstantiated and lacks any factual support in violation of Rule 2 of the Rules Governing Section 2255 Proceedings for the United States District Courts. Except for his conclusion the Government is guilty of misconduct because it engaged in selective prosecution, Thurman supplied no factual support upon which to test the validity of his conclusion. Such a pleading does not call for an evidentiary hearing. *See Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972). Consequently, Thurman has failed to adequately plead his claim in violation of Rule 2(b)(2) of the Rules Governing Section 2255 Proceedings for the United States District Court and he is **DENIED** § 2255 relief.

### VI. Conclusion

Thurman is not entitled to any relief under 28 U.S.C. § 2255 and his motion will be **DENIED** (Court File No. 1).

An Order shall Enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**